UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                      :

OLIVIER GOUREAU and OLIVIER GOUREAU, INC.,  :
                                                      :           12 Civ. 6443 (PAE)
                         Plaintiffs,     :
                                                        :           OPINION & ORDER
                     -v-                                       :
                                                       :
NOEMI GOUREAU, NICOLAS GOUREAU,                :
STEPHANIE GOUREAU, GOOBERRY CORP., NOG  :
INTERNATIONAL, INC., and FOPPS, INC.            :
                                                       :
                        Defendants.    :
                                                       :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       This case involves a dispute over a family business.  Plaintiff Olivier Goureau ("Olivier") and his company, Olivier Goureau, Inc. ("Goureau, Inc."), allege that his estranged wife, Noemi Goureau ("Noemi") and her two children from a previous marriage, Nicolas Goureau ("Nicolas") and Stephanie Goureau ("Stephanie"), along with the family-owned businesses Gooberry Corp. ("Gooberry") and FOPPS, Inc. ("FOPPS"), have infringed his rights in trademarks known as the "COURAGE.B" trademarks.[1]  Olivier also alleges that Noemi, Nicolas, and Stephanie wrongfully ousted him from a joint venture, which utilized these trademarks.

       The sole issue presently before the Court is a motion to dismiss by Stephanie, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that the allegations in the Amended Complaint relating to her are conclusory.  For the reasons that follow, that motion is granted.

---

[1] NOG International, Inc. ("NOG") is also named as a defendant, but the parties have stipulated that it will not incur damages and is in the case solely to be bound by the case's outcome.  Dkt. 31.

I.     Background[2]

    A. Factual Allegations

In 2008, Goureau, Inc. originated the trademark and trade name "COURAGE.B." Am. Compl. ¶ 12. An "undocumented joint venture arrangement" operated the family-owned businesses that are parties here as one integrated unit from 2008 through April 2012. *Id.* ¶ 22. In 2008, as part of that venture, NOG and FOPPS, with Goureau, Inc.'s permission, began to use the "COURAGE.B" trademark in their retail stores, and in 2009, Gooberry similarly began to use the trademark in its retail stores. *Id.* ¶¶ 13–15, 22(d)–(e).

Olivier alleges that the joint venture originated in 2008 between him and Noemi, who were then married. *Id.* ¶¶ 6, 22(a). Each was a 50% owner of the joint venture and was entitled to 50% of the profits earned by its businesses. *Id.* ¶¶ 22(a)–(b). In 2009, Nicolas—who is Noemi's son and Olivier's stepson and nephew—was added to the joint venture, with an equal share in the ownership and profits. *Id.* ¶ 22(c).

During the joint venture, Olivier alleges, he managed all of its businesses full time, with as-needed assistance from Noemi and Nicolas, *id.* ¶ 22(g), and he served as *de facto* chief executive for each of its businesses, *id.* ¶¶ 25–26. Olivier alleges that Goureau, Inc. functioned as the purchasing arm for all the retail stores, but it did not seek reimbursement from Gooberry, FOPPS, or NOG for merchandise it bought, because these companies were part of the same family-centered joint venture. *Id.* ¶ 22(f).

In late 2010, Nicolas (as president of Gooberry), applied to register the trademarks "COURAGE.B" and "CB COURAGE.b" with the United States Patent and Trademark Office

---

[2] The Court's account of the underlying facts in this case is drawn from the Amended Complaint (Dkt. 10). On a motion to dismiss, the Court takes all properly pleaded facts in the complaint as true.

(the "PTO"). *Id.* ¶ 17. In 2011, the PTO granted those registrations, in Gooberry's name. *Id.* ¶ 19.

Stephanie is Noemi's daughter and Olivier's stepdaughter and niece. *Id.* ¶ 7. The Amended Complaint alleges only the following as to her involvement in the joint venture:

> At some time in 2011, Noemi and Nicolas proposed Defendant Stephanie as an additional joint venturer with an equal share. Although there was general agreement on this principle and counsel was engaged to document this arrangement (including Stephanie) in corporate form in January 2012, the terms on which she would join the joint venture were never fully agreed upon or reduced to writing. Even so, on information and belief, Stephanie has claimed and continues to claim an ownership interest in, and a share of the income and profits of, all the joint venture business entities.

*Id.* ¶ 23.

In April 2012, divorce proceedings were commenced between Olivier and Noemi. *Id.* ¶ 27. At the same time, Olivier alleges, "Defendants Noemi, Nicolas and Stephanie, acting in concert, knowingly and wrongfully purported to oust Plaintiffs from any further participation in the joint venture." *Id.* Defendants excluded Olivier from the joint venture businesses, denied him access to the companies' books and records, and stopped paying him any salary or portion of the profits of the joint venture entities. *Id.* ¶¶ 28–33.

**B. Procedural History**

On August 23, 2012, plaintiffs filed a Complaint, Dkt. 1, and on November 13, 2013, an Amended Complaint, Dkt. 10. It contains seven claims: for fraudulent registration of the "COURAGE.B" trademark, Am Compl. ¶¶ 34–41 (Count One); for unauthorized use of the trademark, causing confusion and dilution of it, *id.* ¶¶ 42–48 (Count Two); for unjust enrichment, *id.* ¶¶ 49–50 (Count Three); for breach of fiduciary duty, *id.* ¶¶ 51–57 (Count Four); for conversion of the mark and plaintiffs' customer lists, *id.* ¶¶ 58–68 (Count Five); for an accounting and dissolution of the joint venture, *id.* ¶¶ 69–73 (Count Six); and for a declaratory

3

judgment defining the legal relations between the parties and their respective rights to the assets, income, and profits of the corporate defendants, *id.* ¶¶ 74–77 (Count Seven).

On November 30, 2012, Noemi, Nicolas, FOPPS, and Gooberry filed an answer. Dkt. 15. That same day, Stephanie moved to dismiss the Amended Complaint. Dkt. 16. On December 17, 2012, plaintiffs filed an opposition to that motion. Dkt. 19. On December 27, 2012, Stephanie filed a reply. Dkt. 23. Stephanie argues that plaintiffs' allegations as to her are conclusory and do not plausibly allege her involvement in the joint venture.

## II. Discussion

### A. Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Accordingly, a district court must accept as true all well-pleaded factual allegations in the complaint, and draw all inferences in the plaintiff's favor. *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006); *see also Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) ("We review the district court's grant of a Rule 12(b)(6) motion to dismiss *de novo*, accepting all factual claims in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."). A complaint is properly dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. Further, important

here, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Ultimately, where the plaintiff's claims have not been "nudged . . . across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly,* 550 U.S. at 570.

### B. Analysis of the Claims Against Stephanie

Although the Amended Complaint on its face did not draw this distinction, plaintiffs now state that, in the Amended Complaint, they did not intend to name Stephanie as a defendant on their federal trademark claims. Pl. Br. 1. Rather, in their opposition papers, plaintiffs state that Stephanie is a defendant only in the "concurrent claims arising under state law (principally Counts 4, 6[,] and 7)." *Id.* Dismissal of the trademark claims would independently be required under Rule 8, because there are no allegations in the Amended Complaint of conduct by Stephanie relating to the trademarks that plaintiffs claim to own. The Court, therefore, grants the motion to dismiss as to Counts One, Two, Three, and Five.

As to the remaining claims, Count Four alleges that defendants breached their fiduciary duties to Olivier and Goureau, Inc. by excluding them from the profits of the joint venture and refusing to allow Olivier to inspect the books and records of the other companies, *id.* ¶¶ 51–57; Count Six demands an accounting for, and dissolution of, the joint venture, on the grounds that defendants made it impossible or impracticable for plaintiffs to continue involvement with it, *id.* ¶¶ 70–72, 73; and Count Seven seeks a declaratory judgment defining the legal relations between the parties and their respective rights to the assets, income, and profits of the corporate defendants, *id.* ¶ 77.

The Court's analysis begins with the observation that Stephanie plays at best a cameo role in the Amended Complaint. She is mentioned by name only three times. *See* Am. Compl.

¶¶ 7 (defining Stephanie as a party), 23 (alleging that Stephanie was proposed as member of joint venture), and 27 (alleging that Stephanie participated in ousting Olivier from the joint venture). Plaintiffs urge that they intended to refer to Stephanie with every "allegation directed generally to 'Defendants.'" This opportunistic claim is dubious, given plaintiffs' current claim that they did *not* intend to include Stephanie when using the same word, "Defendants," in connection with Counts One, Two, Three, and Five. Pl. Br. 3. Nevertheless, despite this post-hoc construction, the Court will consider the word "Defendants" to include Stephanie to the extent that word is used in connection with Counts Four, Six, and Seven, in deciding the critical issue here: whether she is plausibly alleged, in non-conclusory terms, to have been a member of the joint venture.

The Amended Complaint clearly alleges (1) the existence of a joint venture, and (2) the roles of the other defendants, Noemi and Nicolas, and their respective companies, FOPPS and Gooberry:

> [A]n undocumented joint venture arrangement operated the group of family-owned businesses (Goureau Inc., NOG, Gooberry and FOPPS) as one integrated unit from 2008 through April 2012. This was done pursuant to oral arrangements between the parties that were not reduced to writing, but were consistently observed in practice for nearly four years.

Am. Compl. ¶ 22. The Amended Complaint specifies how the joint venture operated and the roles that each party played. *See id.* ¶¶ 22(a)–(j). However, none of those subsections mention Stephanie.

Stephanie's role in the joint venture is, therefore, unclear from the Amended Complaint. The Amended Complaint does allege that Stephanie's membership in the venture was *proposed* to be on an equal share. But, tellingly, it states that such an arrangement was "never fully agreed upon":

> At some time in 2011, Noemi and Nicolas proposed Defendant Stephanie as an additional joint venturer with an equal share. Although there was general

agreement on this principle and counsel was engaged to document this arrangement (including Stephanie) in corporate form in January 2012, the terms on which she would join the joint venture were never fully agreed upon or reduced to writing.

Am Compl. ¶ 23.

Only one line in the Amended Complaint alleges *actual* participation by Stephanie in the joint venture: "Even so, on information and belief, Stephanie has claimed and continues to claim an ownership interest in, and a share of the income and profits of, all the joint venture business entities." *Id.* The question before the Court, then, is whether that allegation is legally sufficient, given that "allegations in a complaint must be complete enough to enable a reader to understand how each defendant was personally involved in the wrongdoing plaintiff is alleging." *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 2012 WL 2979058, at *9 (S.D.N.Y. 2012) (citing *Onwuka v. NYC Taxi Limousine Comm'n*, No. 10–5399(SLT)(LB), 2012 WL 34090, at *4–5 (E.D.N.Y. Jan. 6, 2012)). It is not, because it falls far short of alleging facts sufficient to make out all required elements of a joint venture under New York law.

Under New York law,[3] a joint venture requires five elements:

(1) two or more persons must enter into a specific agreement to carry on an enterprise for profit; (2) their agreement must evidence their intent to be joint venturers; (3) each must make a contribution of property, financing, skill, knowledge, or effort; (4) each must have some degree of joint control over the venture; and (5) there must be a provision for the sharing of both profits and losses.

---

[3] All parties apply New York law in their submissions; the Court agrees that such law applies: Where "[t]he parties' briefs assume that New York law controls . . . such 'implied consent . . . is sufficient to establish choice of law.'" *Wolfson v. Bruno*, 844 F. Supp. 2d 348, 354 (S.D.N.Y. 2011) (quoting *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000)). And New York law applies here, because the joint venture was formed in New York and consists entirely of New York parties. The Amended Complaint alleges that the fiduciary duties arising from the joint venture stem from New York Partnership Law. *See* Am. Compl. ¶¶ 53–57 (citing N.Y. P'ship Law § 43).

*Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 67–68 (2d Cir. 2003) (quoting *Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.*, 909 F.2d 698, 701 (2d Cir. 1990)); *see also Siti-Sites.com, Inc. v. Verizon Commc'ns, Inc.*, No. 10 Civ. 3751 (DLC), 2010 WL 5392927, at *5 (S.D.N.Y. Dec. 29, 2010) *aff'd*, 428 F. App'x 100 (2d Cir. 2011). At the motion to dismiss stage, "[t]he absence of any one of these elements is fatal to the establishment of a joint venture." *Zeising v. Kelly*, 152 F. Supp. 2d 335, 347–48 (S.D.N.Y. 2001); *see also Fetter v. Schink*, No. 11 Civ. 6239 (JFK), 2012 WL 4510684, at *3 (S.D.N.Y. Oct. 1, 2012) (same, at summary judgment stage).

As to Stephanie, the Amended Complaint fails to allege at least three of these elements. Even assuming that the Court may infer that Stephanie acted for profit, as plaintiffs urge, *see* Pl. Br. 4–5, there are no allegations that Stephanie made "a contribution of property, financing, skill, knowledge, or effort"; that she had "some degree of joint control over the venture"; or that she agreed to share in the losses as well as the profits.

On the contrary, the Amended Complaint makes apparent that Stephanie did not own any business entity involved in the joint venture. *See* Am. Compl. ¶¶ 4–5, 8–9. It is devoid of any allegations as to contributions that she brought to the venture. Indeed, there are no allegations that Stephanie even worked for any joint venture business, let alone that she contributed financing, property, skill, knowledge, or effort.

As to joint control, the Amended Complaint alleges that Olivier was the primary operator and manager of the venture, with input from Noemi and Nicolas. *See* Am. Compl. ¶¶ 22(a)–(j), 25–26. There are no claims that Stephanie participated in any decision of the venture, other than the conclusory allegation that she acted in concert with Noemi and Nicolas to oust plaintiffs from the venture. *See id.* ¶ 27.

Finally, there is no allegation that Stephanie agreed to share in the losses of the joint venture as well as its profits. "If there was no agreement as to the manner in which the parties were to share in the profits and the losses, the agreement did not create a joint venture." *Zeising*, 152 F. Supp. 2d at 348–49 (citing *Natuzzi v. Rabady*, 177 A.D.2d 620 (2d Dep't 1991)). Here, the Amended Complaint contains no allegations of such an agreement. And shared profits are simply not enough: "'[T]he fact that an individual may receive a share of the profits is not dispositive, since all of the elements of the relationship must be considered,' including whether the alleged agreement contained a provision for sharing losses as well." *Fetter*, 2012 WL 4510684, at *4.

The unavoidable conclusion is that the Amended Complaint fails to allege that Stephanie agreed to participate in a joint venture. This lapse, in turn, undermines each of the three claims that plaintiffs assert they have raised against Stephanie.

As to Count Four, the existence of a joint venture is a necessary predicate to plaintiffs' claims of breach of fiduciary duty. "The well-settled elements of a cause of action for participation in a breach of fiduciary duty are 1) breach by a fiduciary of a duty owed to plaintiff, 2) defendant's knowing participation in the breach, and 3) damages." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 281–82 (2d Cir. 1992). "A fiduciary relationship 'exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.' Such a relationship, necessarily fact-specific, is grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions . . . ." *EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y.3d 11, 19 (2005) (quoting Restatement (Second) of Torts § 874, Comment a). Because plaintiffs have not adequately alleged that Stephanie was a member of the joint venture, and have

9

...
...

not alleged that she owed plaintiffs a fiduciary duty for any other reason, there is no factual support for plaintiffs' claim that she owed them a fiduciary duty.

Counts Six and Seven seek, respectively, an accounting and dissolution of the joint venture, Am Compl. ¶ 73, and a declaratory judgment defining the legal relations between the parties and their respective rights to the assets, income, and profits of the corporate defendants, *id.* ¶ 77. Both of these causes of action, as against Stephanie, depend on her participation the joint venture. Because the plaintiffs do not satisfactorily allege that she was a member of the venture, there is no basis for a claim to equitably distribute her share of its assets. Nor is there a basis for a declaratory judgment as to her rights in that venture. *See Luckenbach S.S. Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963) ("Declaratory relief is a mere procedural device by which various types of substantive claims are vindicated."); *Reid v. Supershuttle Int'l, Inc.*, No. 08CV4854 JG VVP, 2010 WL 1049613, at *10 (E.D.N.Y. Mar. 22, 2010) ("A declaratory judgment, however, is not a cause of action, but a form of relief that may be available if plaintiffs' substantive claims have merit.").

### C. Leave to Amend

Plaintiffs seek leave, "in the event that greater specificity is required," to amend once more their Amended Complaint. Pl. Br. 6. This bid is quickly put to one side. Plaintiffs have not supplied the Court with a proposed Second Amended Complaint. Nor have they identified in some other fashion the factual allegations they would add, as to Stephanie, if given leave to amend. Rather, plaintiffs audaciously seek to shift the burden on this point to Stephanie, stating that her "answer to the Complaint should quickly demonstrate what (if any) interest she claims," and that "[i]f the pleadings do not provide definitive answers to these questions, discovery will." *Id.*

Leave to amend a complaint shall be given "freely" when "justice so requires." Fed. R. Civ. P. 15(a)(2).  "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Williams v. CitiGroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  However, "a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200–01 (2d Cir. 2007); *see also AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) ("Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim.").

Here, plaintiffs have had ample opportunities to allege or otherwise identify sufficient facts, if any exist, that would substantiate their conclusory claim that Stephanie participated in the joint venture.  Yet in neither the Complaint (Dkt. 1), the Amended Complaint (Dkt. 10), their brief in opposition, nor their request for leave to amend (Dkt. 19) have plaintiffs done so.  Nor did plaintiffs seek leave to amend their complaint in response to Stephanie's motion to dismiss, which put plaintiffs on notice of their pleading failure.[4]  Having foregone that opportunity, the Court will not grant plaintiffs yet another opportunity to replead.

---

[4] Although not necessary to this decision, this Court's Individual Rules underscore that a party confronted with a motion to dismiss who elects to defend the Complaint rather than exercising his right to amend it waives his right thereafter to amend it. *See* Individual Rules 3(B) ("If a motion to dismiss is filed, the plaintiff has a right to amend its pleading, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), within twenty-one days.  If the non-moving party elects not to amend its pleading, no further opportunity to amend will be granted and the motion to dismiss will proceed in the normal course.").  This rule seeks to prevent parties from relitigating motions to dismiss by encouraging them to use their right to amend to cure any deficiency.  Plaintiffs failure to do so here is more abusive than in the scenario that these rules seek to discourage, because plaintiffs have already filed an Amended Complaint.

In addition, the Court finds that any amendment to the Amended Complaint would be futile. "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). In their opposition brief, plaintiffs do not identify any new facts or theories of liability that are now available that were unavailable at the time of their Amended Complaint.

## CONCLUSION

For the reasons stated above, plaintiffs' Amended Complaint is dismissed as against Stephanie Goureau, and leave to amend is denied. The Clerk of Court is directed to terminate the motion pending at docket number 16.

All remaining parties in this case shall continue on the discovery schedule set by the Court's December 20, 2012 case management plan. Dkt. 20. The next conference will be held on May 23, 2013, at 11:00 a.m.

SO ORDERED.

_____
Paul A. Engelmayer
United States District Judge

Dated: February 4, 2013
       New York, New York

12