IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
OLIVIER GOUREAU and OLIVIER GOUREAU, :
INC., :
: 
: Civil Action No. 12 cv 6443-PAE
:
Plaintiffs,     : ECF CASE
:
-against-     :
:
NOEMI GOUREAU, NICOLAS GOUREAU, :
GOOBERY CORP., NOG INTERNATIONAL, INC. :
and FOPPS, INC., :
:
:
Defendants.   :
------------------------------------------------------------------X


**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
CROSS-MOTION TO FILE A SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................. 1

ANALYSIS.................................................................................................................................... 1

    I.  Plaintiffs Should be Excused from a Short Period of Noncompliance with the Pleading Amendment Deadline Which has Caused No Prejudice. The Proposed Second Amended Complaint Does Not Assert New Claims. .......................... 1

    II.  Plaintiffs Have Adequately Pleaded the Existence of a Joint Venture ................................. 6

        a.  Plaintiffs Have Adequately Pleaded the Existence of Joint Control or Can Readily Do So. ........................................................................................... 7

        b.  Plaintiffs Have Always Alleged That Losses as Well as Profits Were Shared ................ 8

CONCLUSION.............................................................................................................................. 9

## TABLE OF AUTHORITIES

**Case**   **Page**

*Block v. First Blood Assoc.,*
  988 F.2d 344 (2d Cir. 1993) ............................................................................................... 6

*Cosy Goose Hellas v. Cosy Goose USA, LTD.,*
  581 F.Supp. 2d 606 (S.D.N.Y. 2008) .................................................................................. 7

*Inside Radio, Inc. v. Clear Channel Communications, Inc.,*
  209 F.Supp.2d 302 (S.D.N.Y. 2002) ................................................................................ 5, 6

*McCarthy v. Dun & Bradstreet Corp.,*
  482 F.3d 184 (2d Cir. 2007) .............................................................................................. 4, 6

*Monahan v. New York City Dept. of Corr.,*
  214 F.3d 275 (2d Cir. 2000) ............................................................................................... 6

*Nightingale Group, LLC v. CW Capital Mgmt.,*
  11 Civ. 9293 (PAE) (S.D.N.Y. July 5, 2012) ............................................................... 3, 6, 9

*Northwestern Shipping Funds I, LLC v. Icon Capital Corp.,*
  12 Civ. 3584 (S.D.N.Y Jan. 24 2013) ................................................................................ 8

*Oscar v. BMW of N. Am., Inc.,*
  09 Civ. 11(PAE), 2011 (S.D.N.Y. Dec. 20, 2011) ............................................................. 4

*Siegel v. Converters Transportation, Inc.,*
  714 F.2d 213 (2d Cir. 1983) .............................................................................................. 5

*Sokol Holdings, Inc. v. BMB Munai, Inc.,*
  05 Civ. 3749, 2009 U.S. Dist. LEXIS 72659 (S.D.N.Y. 2009). ......................................... 4

**Rules**

Fed.R.Civ.P. 16(b)(4) .............................................................................................................. 4

Fed.R.Civ.P. 15(a)(2) .............................................................................................................. 6

**PRELIMINARY STATEMENT**

Plaintiffs have cross-moved for leave to file a second amended complaint. The proposed amendments: (1) eliminate claims against Stephanie Goureau which the Court dismissed, and (2) strengthen the Amended Complaint's allegations as to the details of the arrangements between the parties to the joint venture for the sharing of profits, losses and responsibilities. The amendments do not affect the substance of the joint venture-related claims in this case. This reply memorandum is respectfully submitted, along with the accompanying Declaration of Olivier Goureau, in further support of the proposed amendment.

**ANALYSIS**

**I. Plaintiffs Should be Excused from a Short Period of Noncompliance with the Pleading Amendment Deadline Which has Caused No Prejudice. The Proposed Second Amended Complaint Does Not Assert New Claims.**

Defendants argue that the proposed second amendment to the complaint (proffered in response to defendants' motion for partial judgment on the pleadings filed on February 14, 2013) is untimely since this Court's scheduling order of December 21, 2012 established a January 21, 2013 deadline for amending the pleadings. Under the circumstances, justice requires that plaintiffs be afforded some relief from this deadline so as to permit the proposed technical amendments, which do not change the theory of the case and which defendants do not even claim have caused them any prejudice.

From the beginning, plaintiffs' pleadings have made it clear that the parties operated an *undocumented* four-year joint venture, and that in April or May 2012 the defendants seized, and have continually denied plaintiffs access to, all the assets and files of the joint venture's constituent businesses. Those actions have obviously made it difficult to supply evidentiary detail in the complaint. As the current Amended Complaint states:

> 29.     Defendants seized control of all the books, records, bank

accounts, inventory and other assets of Gooberry and FOPPS and deprived Plaintiffs of any access thereto.

30.     Defendants removed Plaintiff Goureau as a signatory on all bank and credit card accounts of Defendants Gooberry and FOPPS, except for two credit cards that had substantial balances due and owing – which Defendants sought to require Plaintiff Goureau to pay personally.

31.     Defendants limited Plaintiffs' access to the books and records of NOG notwithstanding that Goureau continued to operate the NOG retail store. Defendants have locked Goureau out of the partnership's computer system, including all electronic access to NOG's financial records, customer lists (which took Goureau decades to develop), and mailing lists. Goureau is a 50% record owner of NOG.

\* \* \* \* \* \*

52.     Plaintiffs and Defendants were engaged in a general partnership by virtue of their 2008 oral agreement to share the *profits, losses, and expenses* of their joint venture. They actually did so until April 2012 when Defendants impermissibly excluded Plaintiffs from the joint venture. (Emphasis added).

\* \* \* \* \* \*

71.     Collectively, Defendants have persistently and willfully breached the oral partnership agreement or have made it impracticable for Plaintiffs to continue carrying on the joint venture (or business of any fashion) with the Defendant partners.

72.     Indeed, Defendants have made it impossible for Plaintiffs to participate in the joint venture because they have excluded Plaintiffs from all aspects (including the fruits) of the partnerships' joint venture in an apparent effort to force Plaintiffs out of the trade and out of business.

These allegations, which comprise the essential theory of the joint venture-related claims in this case, will not change if the amendment is permitted. The major function of the proposed Second Amended Complaint ("SAC") is to strengthen the Amended Complaint's allegations as to the details of the arrangements between the parties to the joint venture for the sharing of profits, losses and responsibilities. For example, the proposed SAC alleges that "[Defendant Nicolas] contributed his skills to the joint venture in various forms, including performing internal accounting and bookkeeping functions for all the entities. (SAC ¶22(d)). Importantly, the SAC

2

also adds documentation of the fund-commingling aspect of the joint venture allegations (Exs. 3, 4) – documentation that was not available to plaintiffs until it was provided by way of informal discovery on February 11, 2013, three weeks after the passage of the amendment deadline. Attached as an appendix hereto is a copy of counsel's transmittal letter of February 11, 2013 covering those documents.

Further, plaintiffs informed defendants and Magistrate Judge Freeman on February 21, 2013, shortly after receiving defendants' informal discovery and a week after being served with defendants' motion for judgment on the pleadings, that they intended to further amend the complaint to cure the alleged defects. This was just one month after the deadline, and before any effort had been expended based on the pre-existing pleadings, other than the motion for judgment on the pleadings. (Unlike the first amendment to the complaint, no discussion among counsel about alleged pleading deficiencies preceded that motion).[1] Plaintiffs' conduct does not show any lack of diligence, but merely that counsel had previously been operating (as alleged) on incomplete information, and hastened to take corrective action as soon as this was discovered. Plaintiffs accordingly sought defendants' consent to the proposed amendment, which was refused, and only then filed this cross-motion for leave to amend on March 11, 2013.

Among the new information that came into plaintiffs' hands after the deadline was Exhibit 3 to the proposed SAC – a document prepared by defendant Nicolas Goureau and previously unavailable to plaintiffs. That document contains a detailed three-month cash flow summary for the constituent businesses, treating them as a single entity – a graphic illustration

---

[1] Although Rule 3.B of this Court's Individual Rules and Practices in Civil Cases applies to motions to dismiss and not to motions for judgment on the pleadings, the above conduct constitutes substantial compliance with that Rule. Neither defendants nor the Court have been discommoded by plaintiffs' response to the motion for judgment on the pleadings. Thus, it could never be contended (as in *Nightingale Group v. CW Capital, infra,* cited by defendants) that plaintiffs deliberately waived their right to amend. They did not oppose the motion for judgment on the pleadings but instead proceeded with this cross-motion to amend so as to eliminate possible pleading issues.

that those businesses shared expenses *and losses* for the covered period (which was not profitable). Exhibit 4 to the SAC contains invoice payment information that likewise shows commingling of funds as well as providing some insight into how the joint control of the businesses operated. As defendants must concede, plaintiffs did not possess these documents until after the January 21 deadline for amending the pleadings. Clearly the plaintiffs knew that financial records existed and that Nicolas kept them, but they could provide no details without access to the records themselves, and those records had been withheld. It is therefore incorrect that "[t]he Proposed Complaint includes no new allegations or facts as to which Plaintiffs were not aware prior to the Scheduling Order's January 21 deadline to amend." (Def. Mem. at 9).

Notwithstanding the Court's deadline for amendment, leave to amend should still be granted at this early stage for "good cause." *See, Oscar v. BMW of N. Am., Inc.,* 09 Civ. 11(PAE), 2011 WL 6399505 (S.D.N.Y. Dec. 20, 2011); Fed.R.Civ.P. 16(b)(4). To show good cause, the moving party must "show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Sokol Holdings, Inc. v. BMB Munai, Inc.,* 05 Civ. 3749, 2009 U.S. Dist. LEXIS 72659 at *24 (S.D.N.Y. 2009). The movant fails to show good cause when the "proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *Id*. at *8. That is not the case here. In support of their position that Plaintiffs have not acted diligently, Defendants rely on *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir. 2007). There the Second Circuit affirmed the denial of a motion for leave to amend the complaint, concluding that "the amendment would constitute *an entirely new claim* that would have *prejudiced defendants* because the amendment was sought at a late stage of litigation, *after the close of discovery and after the defendants had moved for summary judgment,*" thus requiring a re-opening of merits discovery, new expert

reports, and supplemental depositions of those same experts. *Id.,* 482 F.3d 184 at 200, 201 (*emphasis added*). Here, none of those conditions apply: there has been no formal discovery and the documents included as Exhibits 3 and 4 to the SAC were not available to plaintiffs until after the deadline had passed. Indeed, as pleaded, defendants have generally denied plaintiffs access to the records of the joint venture's constituent businesses, and that is a basis for one of plaintiffs' claims for relief. (Amended Complaint, Count 4). Defendants' argument that Plaintiffs failed to act diligently is, therefore, without legal or factual merit.

Furthermore, the proposed Second Amended Complaint does not contain any new claims. Instead, the amendments simply put additional factual flesh on the bones of the preexisting joint venture allegations. In a seminal *per curiam* opinion some thirty years ago, Judges Friendly, Oakes, and Cardamone spoke thus for the Second Circuit: "We held over forty years ago that [former] Rule 15(c) was to be liberally construed, particularly where an amendment does not allege a new cause of action but merely…make[s] defective allegations more definite and precise." *Siegel v. Converters Transportation, Inc.,* 714 F.2d 213, 216 (2d Cir. 1983) (internal quotation marks omitted). This is a recognition that even though lawyer work product may not always be perfect the first time around, that lack of perfection should not lead to Draconian results. Failure to permit the proposed amendment here (with prejudice, as defendants contend is required) would in effect constitute a forfeiture of a meritorious claim and allow defendants to profit from their own wrongdoing. To this end the Second Circuit also stated, "[t]he purpose of Rule 15 'is to provide maximum opportunity for each claim to be decided on its merits rather than procedural technicalities.'" *Id.,* 714 F.2d at 216. This has been the Second Circuit's consistent position for the better part of a century. *See, Inside Radio, Inc. v. Clear Channel Communications, Inc.,* 209 F.Supp.2d 302, 304 (S.D.N.Y. 2002), *citing Monahan v. New York*

5

*City Dept. of Corr.,* 214 F.3d 275, 283 (2d Cir. 2000) (citations omitted) ("leave [to amend a complaint] shall be freely given…because pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated and mere technicalities should not prevent cases from being decided on the merits.").

"The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Inside Radio, Inc., supra,* 209 F.Supp.2d at 304-305, *citing Block v. First Blood Assoc.,* 988 F.2d 344,350 (2d Cir. 1993). Defendants have not submitted a factual affidavit (or even argued in their Memorandum of Law) that there has been any bad faith or that they would be prejudiced if plaintiffs' cross-motion were granted. The short period of noncompliance with the amendment deadline should therefore be excused.

## II. Plaintiffs Have Adequately Pleaded the Existence of a Joint Venture

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that leave to amend should be freely granted "when justice so requires." To be sure, a "district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy, supra,* 482 F.3d at 200 (2d Cir. 2007). Unable to show bad faith, prejudice or undue delay, defendants pitch their argument on the ground of futility. An "[a]mendment is futile if an amended complaint would fail to state a claim on which relief could be granted." *Nightingale Group, LLC v. CW Capital Mgmt.,* 11 Civ. 9293 (PAE), 2012 WL 2674539, at *10 (S.D.N.Y. July 5, 2012). Since the proposed pleading adequately states claims based on the parties' joint venture, the defendants' argument lacks merit.

The thrust of defendants' argument that leave to amend should be denied is: 1) The proposed SAC does not allege facts which show joint control of the joint venture; and 2) plaintiffs allege that Olivier Goureau had "sole" control over the joint venture. (Def. Mem. at

6

13).  Neither is true.  Defendants have misread the proposed SAC, but if it is unclear in that respect this can easily be remedied.

### a. Plaintiffs Have Adequately Pleaded the Existence of Joint Control or Can Readily Do So.

The proposed SAC sets forth all the necessary elements of an oral joint venture:

> Parties can evince their intent to be joined as joint venturers expressly through language in an agreement or impliedly through actions and conduct.  In instances of alleged oral joint ventures, parties may evince their intent to be bound as joint venturers by commingling their property, skills and efforts such that their individual contributions are subject to their co-venturers' actions, efforts and failures. [Citations omitted]

*Cosy Goose Hellas v. Cosy Goose USA, LTD.,* 581 F.Supp. 2d 606, 620 (S.D.N.Y. 2008)

As the accompanying declaration of Olivier Goureau demonstrates, that is precisely what happened here.  He acted as *de facto* chief executive of the venture, but that hardly meant he was vested with control to the exclusion of the other venturers, his wife and her son.  They participated in the venture, albeit their roles shifted and were not formally defined – a situation commonplace in partnerships.  The fact that Olivier was informally given responsibility for running the basic operations of the joint venture at most times did not mean that he had a position superior to his co-venturers or that he had "sole" control that was inconsistent with the existence of a joint venture.  Defendants' claim that SAC 22(i) and 25 state otherwise (Def. Memo at 13)  is simply a distortion of the language of those paragraphs – which on a motion of this sort should be given a liberal reading that accords the plaintiffs (not the defendants) the benefit of all reasonable inferences.

In truth, these paragraphs merely allege facts as to how the joint venture operated in practice.  Plainly Olivier's co-venturers were not subservient to his will, which they amply demonstrated when they seized all aspects of shared control from him in the spring of 2012,

7

locked him out of the business, and took control of all the venture's books, assets, credit card and bank accounts, etc. (*see* proposed SAC ¶¶ 27 through 30).

Though the current Amended Complaint does not expressly state the term "joint control", it is axiomatic that Defendants could not have "seized control" without previously having some degree of control over the vital components of the joint venture. *See Northwestern Shipping Funds I, LLC v. Icon Capital Corp.,* 12 Civ. 3584, 2013 WL 440632 at *5 (S.D.N.Y Jan. 24 2013) (stating that included in the elements of a joint venture "a party must establish that…two or more persons must have **some degree** of joint control over the venture." (Emphasis added) Defendants were therefore not mere employees and this was no "subordinate's insurrection," as defendants suggest. (Def. Memo at 14). In any event, if necessary and so that there can be no doubt, plaintiffs can readily alter the proposed SAC to supply further detail on this point, including the substance of the Goureau Declaration, before the SAC is filed.

### b. Plaintiffs Have Always Alleged That Losses as Well as Profits Were Shared

As noted above (contrary to Def. Memo at 9), plaintiffs sufficiently allege the individual parties' agreement "to share in the [venture's] profits and the losses…in both the Original and Amended Complaint." In fact, both the initial and amended Complaints stated in no uncertain terms "Plaintiffs and Defendants were engaged in a general partnership by virtue of their 2008 oral agreement to *share the profits, losses, and expenses* of their joint venture." (Complaint at ¶52; Amended Complaint at ¶52 emphasis added). The Complaints (original and amended) further allege facts that explain the basic terms of that agreement:

> 22.    As noted above, an undocumented joint venture arrangement operated the group of family-owned businesses (Goureau Inc., NOG, Gooberry and FOPPS) as one integrated unit from 2008 through April 2012. This was done pursuant to oral arrangements between the parties that were not reduced to writing, but were consistently observed in practice for nearly four years. The essence of that joint venture was that:

8

a) Plaintiff Goureau and Defendant Noemi were the two original joint venturers, each with a 50% share in the ownership and profits of all the constituent businesses.

b) The ownership of, and profit from, all the businesses would be divided among the joint venturers.

c) Defendant Nicolas was added in 2009 as an additional joint venturer, with an equal share, on the same terms and conditions.

This paragraph, though not replete with exhaustive evidentiary detail, is by no means just a recitation of the necessary elements of a joint venture, as defendants claim. The proposed SAC simply adds further factual detail which recently became available.

Plaintiffs agree that SAC Exhibits 3 and 4 are fragments of a bigger picture. At this early stage plaintiffs, as alleged, are unable to produce more documentary support about the internal operations of the joint venture because defendants froze Olivier Goureau out of the business. In any event, at this early stage, plaintiffs are not required to know and plead the full extent of defendants' actions.

Defendants' reliance on *Nightingale Group*, *LLC*., *supra*, is also misplaced. In that case, the plaintiff failed to adequately plead all the material elements required under the Civil RICO statute. Because the alleged RICO predicate acts sounded in fraud, that case was governed by the heightened Rule 9(b) pleading standard – an entirely different pleading standard than we have here. *Id.*, at *6 FN 14.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court grant their motion for leave to file a second amended complaint and deny defendants' motion for judgment on the pleadings to dismiss the joint-venture related claims.

Dated: White Plains, New York
March 28, 2013

YANKWITT & McGUIRE, LLP

By:   /s/                           
Harold F. McGuire, Jr., Esq.
Russell M. Yankwitt, Esq.
Daniel F. McGuire, Esq.
140 Grand Street, Suite 501
White Plains, New York 10601
Telephone: (914) 686-1500
Facsimile: (914) 801-5930
hmcguire@yankwitt.com
*Attorneys for Plaintiffs Olivier Goureau and Olivier Goureau, Inc.*

# APPENDIX

**TANNENBAUM HELPERN SYRACUSE & HIRSCHTRITT LLP**
900 Third Avenue
New York, NY 10022
(212) 508-6700
FACSIMILE: (212) 371-1084

Jaclyn H. Grodin
Direct Dial: (212) 508-6776
grodin@thsh.com

February 11, 2013

**VIA FEDERAL EXPRESS**

Harold McGuire, Jr., Esq.
Dan McGuire, Esq.
Yankwitt & McGuire, LLP
140 Grand Street, Suite 501
White Plains, New York 10601

    RE:   *Goureau, et al. v. Goureau, et al.*
           Civil Action No. 12-6443 (PAE) (DF)

Dear Skip and Dan:

    Enclosed please find a disc containing the first document production of Defendants Nicolas Goureau, Noemi Goureau, and Fopps, Inc. and Defendant-Counterclaim Plaintiff-Third Party Plaintiff Gooberry Corp., Bates numbered GOUREAU00001-GOUREAU00614.

    In producing these documents pursuant to Section 10(a) of the Civil Case Management Plan (Dkt. No. 20), Defendants and Counterclaim Plaintiff-Third Party Plaintiff expressly reserve all rights to object to the use by Plaintiffs-Counterclaim Defendants and Third Party Defendant of these documents as evidence for any purpose, in any proceeding in, or at the trial of, this or any other action on the grounds, *inter alia*, of competency, relevancy, materiality, privilege, and admissibility. This production is subject to the Confidentiality Stipulation agreed upon by the parties on February 6, 2013.

Sincerely,

Jaclyn H. Grodin

Enclosure
cc: Paul D. Sarkozi, Esq.
    (*via e-mail only*)