RECEIVED
APR 1 2 2013
U.S.D.C.
WP

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
OLIVIER GOUREAU and OLIVIER GOUREAU, INC.,

                              Plaintiffs,

   -against-

NOEMI GOUREAU, NICOLAS GOUREAU, GOOBERY CORP., NOG INTERNATIONAL, INC. and FOPPS, INC.,

                              Defendants.
---------------------------------------------------------------X

Civil Action No. 12 cv 6443-VB

ECF CASE

**SECOND AMENDED COMPLAINT**

Plaintiffs, Olivier Goureau and Olivier Goureau, Inc. ("Plaintiffs") through their attorneys, Yankwitt & McGuire, LLP, allege as follows:

## PRELIMINARY STATEMENT

1. This lawsuit arises from the fraudulent registration and conversion of two valuable trademarks which were, at all times relevant to this Complaint, owned by plaintiff Olivier Goureau through his company, plaintiff Olivier Goureau, Inc. In 2008 the Plaintiffs entered into an oral general partnership agreement with certain of the defendants and formed a joint venture for the purpose of promoting, buying and selling women's retail merchandise. The corporate parties were all vehicles through which the joint venture operated. The trademarks were used as an integral part of the joint venture's business plan. The trademarks and associated trade names proved successful and the joint venture functioned, for the most part, according to the parties' expectations until April 2012. At that point the defendants breached their fiduciary

duties to the Plaintiffs, purported to exclude Plaintiffs from the joint venture, denied Plaintiffs access to the books and records of the joint venture and the entities through which it operated, and purported to appropriate the trademarks belonging to plaintiff Olivier Goureau, Inc. It was at this time that Plaintiffs discovered that defendant Nicolas Goureau had fraudulently registered the trademarks at issue and converted them to the use of defendant Gooberry Corp., a company which he controls.

2. This action seeks to correct the fraudulent registration of the trademarks, require the defendants to afford Plaintiffs full access to the books and records of the joint venture, account to the Plaintiffs for the profits of the joint venture, dissolve the joint venture, render injunctions and declaratory judgments as appropriate, and award damages to Plaintiffs in an amount that cannot be presently ascertained, but will be established through the results of discovery herein.

**PARTIES**

3. Plaintiff Olivier Goureau ("Goureau") resides in New York State with a principal place of business in New York, New York.

4. Plaintiff Olivier Goureau Inc. ("Goureau Inc.") is a New York business corporation wholly owned by Plaintiff Goureau with a principal place of business in New York, New York. Goureau Inc. is (and has been since 2003) in the business of purchasing women's handbags, leather goods and clothing at wholesale, reselling such merchandise to the trade, and distributing such merchandise to retail stores operated by Defendants NOG, FOPPS and Gooberry as part of the joint venture arrangement more specifically described below.

5. Defendant NOG International, Inc. ("NOG") is a New York business corporation jointly owned by Plaintiff Goureau and Defendant Noemi Goureau with a principal place of

business in Scarsdale, Westchester County, New York. NOG does business under the name "Courage.B" and operates a retail store in Scarsdale which has sold "COURAGE.B" trademarked merchandise exclusively since mid-2008.

6. Defendant Noemi Goureau ("Noemi") is Plaintiff Goureau's estranged wife and resides in New York, New York.

7. Defendant Nicolas Goureau ("Nicolas") is Defendant Noemi's adult son by her prior marriage to Plaintiff Goureau's deceased brother. He resides in New York, New York.

8. Defendant Gooberry Corp. ("Gooberry") is a New York business corporation with its principal place of business in Queens County, New York. Gooberry is a retailer of women's handbags, other leather goods and women's clothing using the trademark "COURAGE.B", and operates retail stores at various locations in the United States, including Greenwich, CT, Palm Beach, FL, Southampton, NY, East Hampton, NY and Aspen, CO. Gooberry's shares, on information and belief, are currently held of record in the name of Defendant Nicolas Goureau, but as explained below this record ownership does not reflect the true economic ownership of Gooberry.

9. Defendant FOPPS, Inc. ("FOPPS") is a New York "S" corporation owned of record by Defendant Noemi. It operates a women's clothing store in New York, New York which sells only merchandise using the trademark "COURAGE.B".

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 and original jurisdiction under 15 U.S.C. § 1121 because this action arises under the Lanham Act, 15 U.S.C. § 1051 et seq. and the state law claims contained herein fall under the

principles of concurrent jurisdiction. Plaintiffs also seek relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) since all Defendants reside in the State of New York.

## OPERATIVE FACTS

### A. Trademark Ownership Issues

12. Plaintiff Goureau Inc. originated the trademark and trade name "COURAGE.B" for women's leather goods, clothing and accessories in the year 2008, when it first used that trademark and trade name in commerce at trade shows promoting the sale of such merchandise. Beginning in 2008, Goureau Inc. has dealt only in merchandise that used the trademark and trade name "COURAGE.B." At all relevant times, Goureau Inc. was (and it still is) the equitable and beneficial owner of that trademark and trade name.

13. With permission of Plaintiff Goureau Inc., Defendant NOG (jointly owned by Plaintiff Goureau and Defendant Noemi Goureau) began to use the trademark and trade name "COURAGE.B" in commerce in 2008 at its retail store in Scarsdale, New York and continues to do so.

14. At some time later in 2008, with the permission of Goureau Inc., and as part of the joint venture arrangement described herein, defendant FOPPS began to use the trademark and trade name "COURAGE.B" at its retail stores. FOPPS has continued to use this mark and profit from to the present date although since April, 2012 FOPPS has not had Goureau Inc.'s permission to do so and that use has been to the exclusion of Plaintiffs. Since April 2012 FOPPS has not shared any of its revenues or profits with Goureau, Inc., nor has it obtained a license for the use of the trademark or trade name.

4

15. At some time later in 2009, with the permission of Goureau Inc. (and as part of a joint venture arrangement described herein) defendant Gooberry began to use the trademark and trade name "COURAGE.B" at its retail stores. Gooberry has continued to use this mark and profit from its use to the present date although since April, 2012 Gooberry has not had Goureau Inc.'s permission to do so and that use has been to the exclusion of Plaintiffs. Since April 2012 Gooberry has not shared any of its revenues or profits with Goureau, Inc., nor has it obtained a license for the use of the trademark or trade name.

16. As noted above, Goureau Inc., and its licensees including NOG were the first to use the mark "COURAGE.B" in commerce, and have always had and still have the right to do so.

17. Notwithstanding those facts, in late 2010 defendant Nicolas (as president of defendant Gooberry), filed two applications on behalf of Gooberry with the United States Patent and Trademark Office for registration of the trademarks "COURAGE.B" and "CB COURAGE.b"[1] (collectively the "Courage Marks") (Copies of the registered marks are attached hereto as Exhibit 1). Both of those applications contain Nicolas' intentionally false sworn statements that "to the best of his knowledge and belief no other person, firm, corporation or association has the right to use said mark in commerce," when in truth (as Nicolas well knew) Goureau, Inc. was and is the originator and the beneficial and equitable owner of the Courage Marks, and that it used those marks in commerce approximately two years before the Gooberry trademark applications were filed in 2010. (Copies of Nicolas' Declarations for the Courage Marks are attached hereto as Exhibit 2).

---

[1] The CB COURAGE.b registered mark is comprised of text and also letters in a stylized form and the COURAGE.B mark is comprised only of text.

18. Plaintiff Goureau was aware that Nicolas had filed registration applications for the Courage Marks – but did not know that the applications named Gooberry as the owner because Nicolas intentionally concealed this fact from Goureau.

19. Based on these two materially false applications, the Courage Marks were registered in 2011 by the USPTO solely in Gooberry's name.

20. These registrations were wrongful and this Court should accordingly order the rectification of the Principal Register of the Patent and Trademark Office to reflect the true ownership of the Courage Marks pursuant the Court's corrective power granted to it by the Lanham Act, 15 U.S.C. § 1119.

21. These wrongful registrations have damaged Plaintiffs in an amount to be determined through discovery and proven at trial, and are continuing to cause further damage and the dilution of the Courage Marks each day the violation continues. Plaintiffs are entitled to recover damages and obtain appropriate declaratory and injunctive relief under the Lanham Act, 15 U.S.C. Section 1120.

**B. The Undocumented Joint Venture**

22. As noted above, an undocumented joint venture arrangement operated the group of family-owned businesses (Goureau Inc., NOG, Gooberry and FOPPS) as one integrated unit from 2008 (2009 in the case of Gooberry) through April 2012. This was done pursuant to oral arrangements between the parties that were not reduced to writing, but were consistently observed in practice for nearly four years. The essence of that joint venture was that:

>   a) Plaintiff Goureau and Defendant Noemi were the two original joint venturers, each with a 50% share in the ownership, profits, losses, and expenses of all the constituent businesses.

b) The ownership of, profits, losses, and expenses of all the businesses would be shared equally among the joint venturers.

c) The joint venturers contributed property and various skills in furtherance of the joint venture, which operated under the name "Courage b."

d) Defendant Nicolas, the record owner of Defendant Gooberry, was added in 2009 as an additional joint venturer, with an equal share, on the same terms and conditions. He too contributed various skills to the joint venture in various forms, including performing internal accounting and bookkeeping functions for all the entities. An example of this, which shows the commingling of the ventures income, expenses, profits and losses prepared by Nicolas, is attached as Exhibit 3.

e) Plaintiffs Goureau and Goureau Inc. would (and did) provide a jump start to Defendant Gooberry's business by permitting it to use the valuable trade name "CB COURAGE.b" for the name of each of its retail stores and to trademark all the merchandise sold in Gooberry stores as "COURAGE.B" merchandise, and would (and did) provide funds and management services to Gooberry as needed. Plaintiffs Goureau and Goureau Inc., therefore contributed valuable and significant property interests to the joint venture in the form of the use of the Courage marks.at the time Nicolas became a member and Gooberry became one of the constituent businesses.

f) Plaintiffs Goureau and Goureau Inc. would (and did) permit Defendant FOPPS to use the valuable trademark and trade name "CB COURAGE.b" for its retail stores and to trademark all the merchandise sold in those stores as

"COURAGE.B" merchandise, and would (and did) provide funds and management services to FOPPS as needed. Plaintiffs Goureau and Goureau Inc., therefore contributed valuable and significant property interests to the joint venture in the form of capital investments in Defendant Fopps as well as the use of the Courage marks.

g) Plaintiff Goureau Inc. would be (and was) the purchasing arm for all the retail stores within the venture, but often did not collect funds from Gooberry or FOPPS or NOG to pay for the merchandise, since these companies were all part of the same joint venture.

h) As equal partners in the joint venture, Defendants Gooberry, NOG, and Fopps would (and did) commingle their assets, liabilities, profits, losses, and expenses and maintained consolidated business records of the joint venture's finances and of the flow of funds between and among the constituent entities. (See Exhibit 2, showing an income/expense cash flow summary and supporting detailed analyses of shared expenses and payments made by the entities in furtherance of the joint venture which operated under the name COURAGE.B.)

i) Plaintiff Goureau would (and did) manage all the businesses full time, with assistance as needed from Defendants Noemi and Nicolas. Plaintiff Goureau would (and did) decide when and where to open new retail stores, would be (and was) in charge of all purchasing, would (and did) supervise the hiring and firing of the employees of all the businesses, would (and did) supervise all

sales procedures, and would (and did) have principal signatory authority over all bank and credit card accounts of all the related businesses.

j) Defendant Noemi would (and did) provide financial resources as necessary and would be (and was) an employee working full time at the joint venture's former headquarters in Long Island City, New York.

k) Funds would be (and were) infused from one business to another within the joint venture, and the credit of one business would be used to support purchases by others within the joint venture, as the overall needs of the venture dictated. For example, Goureau (acting for the joint venture) had free access to Gooberry's business checking account. The reason for this free access was because it was routinely necessary to draw on the venture's funds (wherever located) and cause one constituent entity to pay for the expenses and liabilities of another. The attached wire transaction confirmation receipts show that Goureau (on behalf of Gooberry) set up payments to suppliers and also to SUREPAYROLL, INC., the joint venture's payroll company. (Exhibit 4, attached).

l) All the joint venturers would be paid salaries to the extent the gross profits of the businesses, taken together, permitted it. Those salaries would be paid (by mutual agreement) from whichever entity was convenient and could afford the salaries. For example, Defendant Nicolas was on the payroll of Defendant NOG, but worked largely for Defendant Gooberry and did little or no work for NOG's only discrete business, a store in Scarsdale, New York.

23. As noted above, the record ownership of Gooberry's stock has always resided in Defendant Nicolas, but this record ownership does not reflect either the economic realities of the situation or the historic understanding among the joint venturers. In fact, Defendant Gooberry is, and always was, equitably and beneficially owned by the joint venture described herein.

24. From 2008 until April 2012 Plaintiff Goureau spent 100% of his working time developing and managing the joint venture's businesses (including Gooberry, from 2009 forward). As a part of his duties in managing the joint venture, Plaintiff Goureau served as the chief executive of Defendant Gooberry. He purchased all of the merchandise sold by Gooberry stores through Goureau Inc., supervised all Gooberry's sales, and supervised the hiring and firing of all Gooberry's employees – as he did with all the joint venture's businesses. He received no salary or other compensation from Gooberry for these efforts. It was implicit in these arrangements that Plaintiff Goureau, like the other venturers, would (and did) have ownership interests in the joint venture as a whole and would (and did) have an equal share in the successes and failures of the joint venture businesses as a whole – including Gooberry – and would (and did) share equally in their profits and losses.

25. Plaintiffs Goureau and Goureau Inc. contributed their knowledge, contacts, personal funds, personal credit, labor and expertise to Gooberry, FOPPS and NOG for nearly four years as a part of the joint venture described herein. Goureau served as *de facto* chief executive of all the joint venture businesses. Gooberry at times received infusions of funds from NOG and at times transferred funds to NOG via bank wire transfers.

26. In or about late April 2012, Defendants Noemi and Nicolas (together with Stephanie Goureau, Defendant Noemi's adult daughter from her previous marriage), acting in concert, knowingly and wrongfully purported to oust Plaintiffs from any further participation in

the joint venture. Thereafter, in May 2012, divorce proceedings were commenced between Plaintiff Goureau and Defendant Noemi.

27. Defendants unlawfully and wrongfully purported to throw Plaintiffs Goureau and Goureau Inc. out of the joint venture businesses, denied and continue to deny that Plaintiff Goureau had any ownership interest in those businesses, and denied Plaintiffs further access to any of the joint venture's business records and assets and to any of its then-existing business premises except those occupied by NOG at its retail store in Scarsdale, New York. Plaintiff Goureau Inc. was required to vacate the joint venture's headquarters in Long Island City, New York and establish a new showroom in New York, New York.

28. Defendants seized control of all the books, records, bank accounts, inventory and other assets of Gooberry and FOPPS and deprived Plaintiffs of any access thereto

29. Defendants removed Plaintiff Goureau as a signatory on all bank and credit card accounts of Defendants Gooberry and FOPPS, except for two credit cards that had substantial balances due and owing – which Defendants sought to require Plaintiff Goureau to pay personally.

30. Defendants limited Plaintiffs' access to the books and records of NOG, even though Goureau continued to operate the NOG retail store. Defendants have locked Goureau out of the partnership's computer system, including all electronic access to NOG's financial records, customer lists (which took Goureau decades to develop), and mailing lists. Goureau is a 50% record owner of NOG.

31. Beginning in April 2012 defendants wrongfully appropriated the Courage Marks and Defendants Gooberry and FOPPS began to use them without the permission of Goureau Inc. (their rightful owner) and without paying any royalty or other compensation therefor, and

purported to exclude Plaintiffs from obtaining any benefit from the businesses of Gooberry and FOPPS.

32. Defendants wrongfully ceased the payment of salary to Plaintiff Goureau from the proceeds of the joint venture entities, excluded him from participating in profits from Gooberry or FOPPS store sales, and have attempted to prevent him from drawing cash from Plaintiff NOG for any purpose.

## CLAIMS FOR RELIEF

### Count 1

### Fraudulent Registration
### (Violation of the Lanham Act, 15 U.S.C. § 1120)

### (Against Nicolas Goureau and Gooberry Corp.)

33. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 32 of this Amended Complaint as if fully set forth herein.

34. On November 18, 2010, Nicolas filed applications on behalf of Gooberry with the United States Patent and Trademark Office ("USPTO") to have the Courage Marks registered.

35. As part of those applications, Nicolas represented that Gooberry, of which he was President, was the sole and exclusive owner of the Courage Marks and expressly stated that "no other person, firm, corporation or association" had any rights or interests in them. *See* Exhibit 4 annexed.

36. Nicolas knew these declarations to be false, and had actual knowledge that Goureau Inc., was and is the true owner of the Courage Marks, because he and the other Defendants had previously obtained permission from Goureau Inc., to use the marks in commerce to further the parties' joint venture.

37. Nicolas acted with scienter by making these knowingly false statements in Gooberry's registration applications and therefore had the fraudulent intent to induce the USPTO to register the Courage Marks in Gooberry's name.

38. The USPTO relied on Nicolas' misstatements and registered the COURAGE.B and CB COURAGE.b marks in Gooberry's name on August 9, 2011 and November 29, 2011 respectively.

39. Nicolas acted with scienter and continued his fraud by concealing from Goureau the fact that he had misrepresented Gooberry as the true of owner of the Courage Marks on the applications to the USPTO.

40. Plaintiffs have been and continue to be damaged by Nicolas' fraud because Defendants have unlawfully denied Plaintiffs the right to be registered as the sole owner of the Courage Marks and have excluded Plaintiffs from the fruits of the ownership of the Courage Marks, including royalties, revenues and profits. The amount of this damage is presently unknown to Plaintiffs since they have been denied access to the relevant books and records, but is still to be determined through discovery and trial.

### Count 2
### False Descriptions, Confusion, Dilution
### (Violation of the Lanham Act, 15 U.S.C. § 1125)
### (Against all Defendants)

41. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 41 of this Second Amended Complaint as if fully set forth herein.

42. Defendants have used the Courage Marks in commerce since April 2012 without authorization from Goureau Inc., which as noted should be recognized as the true and exclusive owner of these trademarks. Specifically, Defendants have profited by the use of the Courage

Marks at their stores and online retail website to the exclusion of Plaintiffs, and have not compensated Plaintiffs for such use.

43. Upon information and belief, Defendants control the website <www.courageb.com> (the "Website").

44. Through this Website Defendants solicit consumers for merchandise trademarked with the Courage Marks, and have sold such merchandise and enjoyed profits therefrom to the exclusion of Plaintiffs since April 2012.

45. Upon information and belief, Defendants use the Website to solicit retailers and wholesalers to purchase merchandise that should have been offered for sale for the benefit of the joint venture, but has in fact been sold for the benefit and profit of Defendants to the exclusion of Plaintiffs.

46. Upon information and belief, persons (including but not limited to consumers, retailers, and wholesalers) are likely to have been confused and have been confused by Defendants' false, misleading, and unauthorized use of the Courage Marks in commercial advertising and promotion of merchandise sold in stores and through the Website.

47. Plaintiffs have suffered damages and continue to suffer damages as a result of Defendants' unauthorized, false, and misleading use of the Courage Marks.

### Count 3
### Unjust Enrichment
### (Against All Defendants)

48. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 47 of this Second Amended Complaint as if fully set forth herein.

49. As a result of Nicolas' fraudulent statements to the USPTO, Defendants were unjustly enriched to the extent of the value they and each of them have obtained from the

uncompensated use of the Courage Marks and by the amount of the revenues and profits which they and each of them have denied Plaintiffs from the use of the Courage Marks.

### Count 4
### Breaches of Fiduciary Duties
### (Against All Defendants)

50. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 49 of this Second Amended Complaint as if fully set forth herein.

51. Plaintiffs and Defendants were engaged in a general partnership by virtue of their 2008 and 2009 oral agreements to share the profits, losses, revenues and expenses of their joint venture. They actually did so until April 2012 when Defendants impermissibly excluded Plaintiffs from the joint venture.

52. As joint adventurers the individual parties are fiduciaries of each other and under New York's Partnership Law are accountable to each other for any profits made pursuant to their agreement. N.Y. PTR. Law § 43.

53. The joint venture was generally profitable and on information and belief its constituent businesses continue to be profitable. The individual defendants breached their fiduciary duties to Plaintiffs and damaged Plaintiffs because they have excluded Plaintiffs from sharing in the profits made from the joint venture businesses.

54. Under New York's Partnership Law "every partner shall at all times have access to and may inspect and any of [the partnership books]." N.Y. PTR. Law § 41.

55. The individual defendants breached this fiduciary duty and damaged Plaintiffs because they have refused to let plaintiff Goureau have access to inspect any of the books and records of the joint venture, including the financial records and statements of Gooberry, FOPPS, and NOG.

56. As partners in the joint venture, Plaintiffs are entitled to a full and complete accounting of all joint venture business conducted by Defendants from April 2012, when they wrongfully excluded Plaintiffs from the joint venture, to the present day.

### Count 5
### Conversion
### (Against Nicolas Goureau and Gooberry Corp.)

57. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 56 of this Second Amended Complaint as if fully set forth herein.

58. Plaintiff Goureau Inc. originated the Courage Marks and has exercised possessory rights in them since first using them in retail commerce and in trade shows beginning in 2008.

59. Goureau Inc. exercised its possessory rights over the Courage Marks by licensing their use to Defendants for the purpose of furthering the parties' joint venture.

60. All Defendants knew Goureau Inc. was the true owner of the Courage Marks because they had obtained permission or license from Goureau Inc. to use these marks.

61. Defendant Nicolas exercised dominion over the Courage Marks to the derogation of Goureau and Goureau Inc., and completed the tort of conversion when he fraudulently represented to the USPTO that "to the best of his knowledge and belief no other person, firm, corporation or association has the right to use said mark[s] in commerce."

62. Nicolas continues to exercise dominion over the Courage Marks to the present day because they are wrongfully registered to Gooberry, an entity controlled by him, and are being used without Goureau Inc's. permission to Plaintiffs' financial detriment.

63. Plaintiff Goureau also owns the customer lists and other contacts for all the joint venture businesses, which personally took him decades to develop. Those lists, and the ability to

access them through the partnership's computer system, represent the heart of the joint venture and Plaintiffs cannot operate for much longer without them (the "Lists").

64. Goureau alone created the Lists and has exercised possessory rights over them since first entering the trade approximately thirty years ago.

65. Goureau kept and maintained the Lists on computers maintained at the business premises of NOG, an entity in which he is a 50% record owner.

66. All Defendants knew that the Lists belonged to Goureau and they continue to benefit from them to the exclusion and financial detriment of Plaintiffs.

67. Defendant Nicolas exercised dominion over the Lists and converted them when he gained access to the system through the NOG computers (Nicolas has never done work for NOG), took the Lists for his own and locked Goureau out of the computer system entirely.

### Count 6
### Dissolution of the Partnership
### (Against All Defendants)

68. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 67 of this Second Amended Complaint as if fully set forth herein.

69. As previously set forth above, Defendants have: 1) committed various acts of fraud and deception against the Plaintiffs and the partnership; 2) intentionally diluted the Courage Marks and caused confusion in the marketplace as to their origin through false and misleading statements; 3) unjustly enriched themselves to Plaintiffs' detriment; 4) breached certain fiduciary duties as set forth above; and 5) converted the Courage Marks and the Lists all to Plaintiffs' detriment.

70. Collectively, Defendants have persistently and willfully breached the oral partnership agreement or have made it impracticable for Plaintiffs to continue carrying on the joint venture business (or business of any fashion) with the Defendant partners.

71. Indeed, Defendants have made it impossible for Plaintiffs to participate in the joint venture because they have excluded Plaintiffs from all aspects (including the fruits) of the partnership businesses in an effort to force Plaintiffs out of the trade and out of business.

72. Accordingly, Plaintiffs seek an accounting and dissolution of the partnership, including the equitable distribution of all partnership assets pursuant to Sections 63 and 71 of the New York Partnership Law.

### Count 7
### Declaratory Judgment
### (Against All Defendants)

73. Plaintiffs repeat and reallege the allegations set forth in paragraph 1 through 72 of this Second Amended Complaint as if fully set forth herein.

74. 28 U.S.C. §2201 provides that "In a case of actual controversy within its jurisdiction… any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

75. Actual controversies exist as to the true ownership of two valuable trademarks, and the rights of the parties to the assets, income, revenues and profits of the corporate defendants.

76. This Court should issue a judgment setting forth the legal relations of the individual parties and their rights to the assets, income, and profits of the corporate defendants consistent with the facts developed during discovery and presented at trial.

## Request for Relief

WHEREFORE, Plaintiffs respectfully request this Court:

a) to rectify the COURAGE.B and CB COURAGE.b registrations under 15.U.S.C § 1119 and declare Goureau Inc. as the true owner;

b) to issue a preliminary injunction granting Plaintiffs full access to Defendants' books and records for the purpose of rendering an accounting;

c) to order a full judicial accounting of the joint venture, including all income and profits made by Defendants from January 1, 2012 through the present day;

d) to issue a preliminary injunction granting Plaintiffs full access to the Lists;

e) to enjoin Defendants from unauthorized use of the Courage Marks through use of the website or internet or otherwise, without the permission of Goureau Inc.;

f) to render a declaratory judgment that Plaintiffs are entitled to the exclusive use of the Courage Marks, or, in the alternative, whether any of the Defendants should be entitled to licenses to those marks (and, if so, on what terms), and otherwise to declare the rights of the individual parties to the assets, income and profits of the corporate defendants;

g) to recover such damages as may be proven as a result of the foregoing; and

h) to order such other relief as to the Court may seem just and proper.

Dated: White Plains, New York
April 11, 2013

YANKWITT & McGUIRE, LLP

By: _____
Harold F. McGuire, Jr., Esq.
Russell M. Yankwitt, Esq.
140 Grand Street, Suite 501
White Plains, New York 10601
Telephone: (914) 686-1500
Facsimile: (914) 801-5930
hmcguire@yankwitt.com
*Attorneys for Plaintiffs Olivier Goureau and Olivier Goureau, Inc.*